UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH BROWN, an individual<br><br>Plaintiff,<br><br>v.<br><br>NATALIE RAFFERTY, individually and in her official capacity as an officer for the Rio Vista Police Department; and DOES 1-50, inclusive, individually and in their official capacity as police officers for the Rio Vista Police Department,<br><br>Defendants. | No. 2:19-cv-02180-TLN-CKD<br><br>**ORDER** |

      This matter is before the Court on Defendant Natalie Rafferty's ("Defendant") Motion for Summary Judgment. (ECF No. 26.) Plaintiff Noah Brown ("Plaintiff") filed an opposition. (ECF No. 35.) Defendant filed a reply. (ECF No. 39.) For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

///
///
///
///
///

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On September 12, 2018 at approximately 11:20 p.m., Defendant was on duty as a police officer and K-9 handler with the City of Rio Vista Police Department. (ECF No. 35-2 at 2.) Defendant was on patrol with her K-9 partner, Rio. (*Id.*) Defendant parked her patrol vehicle at the Maxx for Less convenience store and gas station in Rio Vista, California. (*Id.*) Defendant went in the store and while inside the store's employees informed her that Plaintiff had been at the store earlier threatening people, and they did not want him to return. (*Id.* at 2–3.)

Defendant returned to her patrol vehicle and there she saw Plaintiff walking towards the store's entrance. (*Id.* at 4.) Defendant activated her body-worn camera and approached Plaintiff to prevent him from going inside the store. (*Id.* at 5.) Plaintiff was holding the door to the store open when Defendant approached him. (*Id.* at 6.) Defendant smelled an alcoholic odor emitting from Plaintiff and suspected he may have been intoxicated. (*Id.*)

Defendant told Plaintiff he was not allowed in the store and confirmed with the store employees that Plaintiff was the person they told Defendant about earlier. (*Id.*) Plaintiff opened the store's door wider, and Defendant told Plaintiff to keep his hands out of his pockets and to come and sit down. (*Id.* at 8.) Defendant confirmed again with the employees regarding Plaintiff, but Plaintiff denied having been in the store. (*Id.* at 9.)

Defendant gave Plaintiff multiple directives to leave the premises, but he refused to comply. (*Id.* at 12.) Defendant then called for backup. (*Id.*) Defendant told Plaintiff to turn around, but Plaintiff said no and that he was not on parole or probation. (*Id.* at 13.) Defendant told Plaintiff that he needed to leave because he was not wanted there. (*Id.* at 14.) Plaintiff said he was waiting for a ride, but Defendant said "not here" and told Plaintiff that he could walk away. (*Id.* at 15.)

At that point, Defendant moved forward and touched Plaintiff's chest in an attempt to get him to move away from the store and she told him to turn around. (*Id.* at 15–16.) Plaintiff told Defendant to get her hands off him, and Defendant told Plaintiff twice to walk away. (*Id.* at 16.)

---

[1] *    Except as otherwise noted, the facts in this section are undisputed.

2

1   Defendant then radioed that she had a "148," which was police radio code for a subject resisting
2   detention or arrest. (*Id.*)

3   Defendant tried to grab Plaintiff's right arm, but he moved that arm backward. (*Id.*)
4   Defendant then attempted to grab Plaintiff's left arm, but he moved that arm backward and told
5   Defendant to get her hands off him. (*Id.*) Defendant warned Plaintiff "do you want me to bring
6   my dog out here?" (*Id.*) Plaintiff replied, "I don't give a fuck!" (*Id.*) Defendant then told
7   Plaintiff to walk away, and Plaintiff exclaimed "if I knocked your ass out . . . you are invading my
8   space . . . I have a right to defend myself . . . stop touching me!" (*Id.* at 17.)

9   Defendant then attempted to arrest Plaintiff for trespassing. (*Id.*) Defendant tried
10  grabbing Plaintiff's hands, but he pulled them back, preventing her from arresting him. (*Id.* at
11  18.-) Plaintiff, who was taller than Defendant, kept his hands up and told Defendant several times
12  to get her hands off him. (*Id.*) Defendant again radioed for a code "148." (*Id.*) Defendant
13  warned Plaintiff that she was going to call her police dog if he continued to resist. (*Id.* at 19.)
14  Plaintiff replied, "grab your dog then." (*Id.*) Plaintiff continued to resist and moved backwards.
15  (*Id.*) Plaintiff blocked Defendant's attempt to grab his arm and he grabbed both of her hands.
16  (*Id.* at 19–20.) Defendant tried various compliance and distraction strikes on Plaintiff, but they
17  were ineffective. (*Id.* at 20.) Defendant then attempted a leg sweep on Plaintiff, and she took
18  him to the ground to control him and effectuate his arrest. (*Id.*)

19  While on the ground, a physical struggle ensued. (*Id.* at 21.) Defendant felt Plaintiff
20  strike her back several times. (*Id.*) Plaintiff was able to overpower Defendant and stand back up.
21  (*Id.* at 21.) Defendant had not searched Plaintiff for weapons, and she was concerned he was
22  armed. (*Id.* at 22.)

23  Defendant activated her remote-control mechanism for her patrol vehicle, which opened
24  the rear driver's side door and allowed for Rio's deployment. (*Id.* at 23.) During the struggle
25  with Plaintiff, the audio and video from Defendant's body-worn camera became muffled and dark
26  because she was in close quarters with Plaintiff. (*Id.* at 24.) Seconds later, the body-worn camera
27  switched off. (*Id.* at 25.)

28  ///-

As Rio deployed from the vehicle, Defendant called to him. (*Id.* at 26.) Defendant pushed herself away from Plaintiff and she observed Rio bite Plaintiff on the left thigh, pulling clothing away from his body while he was still on his feet. (*Id.*) After Rio was deployed, Defendant radioed dispatch that the "dog was on the bite," which indicated that a K-9 had been deployed and bitten a subject. (*Id.*) Defendant grabbed Plaintiff's left arm and ordered him to the ground, but he refused to comply. (*Id.*) Defendant then grabbed Plaintiff's upper body and directed him to the ground. (*Id.* at 27.)

At that time, Sergeant Thomas Tom arrived on the scene to assist Defendant in arresting Plaintiff. (*Id.*) When Sergeant Tom arrived, he observed Defendant in the middle of the northbound lane of Drouin Drive, and Plaintiff was standing on his feet, waving his arms at Defendant and yelling at her. (*Id.*) Sergeant Tom turned on his body-worn camera and approached to assist Defendant with Plaintiff's arrest. (*Id.* at 28.) Sergeant Tom observed Rio biting Plaintiff's left pant leg, tugging at Plaintiff's clothing. (*Id.*) Sergeant Tom told Plaintiff to get down on the ground, and Plaintiff replied, "fuck you . . . I ain't doing shit." (*Id.*) Sergeant Tom pulled Plaintiff's sweatshirt up toward his face, and grabbed Plaintiff's right wrist, directing Plaintiff down to the ground. (*Id.*) Defendant had a hold of Plaintiff's left arm, while Sergeant Tom took control of Plaintiff's right arm and handcuffed Plaintiff's hands behind his back. (*Id.*)

Defendant contends that once Plaintiff was secured in handcuffs, Defendant took Rio off Plaintiff's left pant leg. (*Id.*) Plaintiff disputes this, and he asserts Defendant commanded Rio to bite him after he was already handcuffed, restrained, and compliant. (*Id.*; ECF No. 44 at 7.) Thereafter, Defendant placed Rio in the back of her police vehicle. (ECF No. 35-2 at 29.)

Following Plaintiff's arrest, Sergeant Tom placed Plaintiff in the back of his police vehicle. (*Id.*) At approximately 12:15 a.m., Officer Ly arrived on scene to transport Plaintiff to Solano County Jail to be medically evaluated. (*Id.* at 34.) Plaintiff was transported to Solano County Jail and then to NorthBay Medical Center. (*Id.*) At NorthBay Medical Center, Plaintiff underwent a medical examination, which revealed multiple abrasions to Plaintiff's left lateral thigh, and a two-centimeter gash over his left heel. (*Id.*) No tendon or muscle involvement was noted, and Plaintiff received one stitch to his left Achilles heel. (*Id.* at 35.) After Plaintiff was

4

1 medically discharged, he was transported to Solano County Jail and booked on charges of
2 trespass and obstruction of a peace officer. (*Id.*)
3      On October 28, 2019, Plaintiff filed the instant action against Defendant and the City of
4 Rio Vista ("City"). (ECF No. 1.) Plaintiff's Complaint asserts eight causes of action:
5 (1) unlawful seizure; (2) excessive force; (3) retaliation for questioning police action;
6 (4) municipal liability under *Monell*; (5) violation of California Civil Code § 52.1; (6) battery;
7 (7) intentional infliction of emotional distress ("IIED"); and (8) negligence. (*Id.*) On April 20,
8 2021, the Court dismissed Plaintiff's first and fourth causes of action with prejudice pursuant to
9 the parties' stipulation. (ECF No. 23.)
10      On May 5, 2021, Defendant filed the instant motion for summary judgment. (ECF No.
11 26.) On May 12, 2021, the Court dismissed the City with prejudice pursuant to the parties'
12 stipulation. (ECF No. 30.) On May 27, 2021, Plaintiff filed an opposition to the instant motion.
13 (ECF No. 35.) On June 3, 2021, Defendant filed a reply. (ECF No. 39.)
14      **II.    STANDARD OF LAW**
15      Summary judgment is appropriate when the moving party demonstrates no genuine issue
16 of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.
17 R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary
18 judgment practice, the moving party always bears the initial responsibility of informing the
19 district court of the basis of its motion, and identifying those portions of "the pleadings,
20 depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"
21 which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.
22 Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof
23 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
24 solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at
25 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a
26 party who does not make a showing sufficient to establish the existence of an element essential to
27 that party's case, and on which that party will bear the burden of proof at trial.
28 ///

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's remaining claims based on several grounds. (ECF No. 26.) Defendant also moves for the Doe Defendants to be dismissed and for summary judgment on Plaintiff's claim for punitive damages. (*Id.*) In opposition, Plaintiff asserts summary judgment should be denied, but he does not address his third claim for retaliation for questioning police action, the Doe Defendants, or his claim for punitive damages. (*See* ECF No. 35.) The Court will address the parties' arguments in turn.

#### A. Evidentiary Objections

As a preliminary matter, the Court will address the parties' evidentiary objections (ECF Nos. 35-2, 44), but only to the extent the Court finds it necessary to the resolution of the instant motion. *See Irigaray Dairy v. Dairy Emps. Union Loc. No. 17 Christian Lab. Ass'n of the United States of Am. Pension Tr.*, 153 F. Supp. 3d 1217, 1234 (E.D. Cal. 2015).

Plaintiff objects to over sixty of Defendant's proffered facts. (ECF No. 35-2.) The stated grounds for Plaintiff's objections are: (1) vague and ambiguous as phrased; (2) calls for speculation; and (3) immaterial and irrelevant. (*Id.*)

"Objections to evidence on the ground that the evidence is irrelevant, speculative, . . .[or] vague and ambiguous . . . are all duplicative of the summary judgment standard itself." *Carden v. Chenega Sec. & Prot. Servs., LLC*, No. CIV. 2:09-1799 WBS, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); *Bd. of Trustees of Cal. Winery Workers' Pension Tr. Fund v. Giumarra Vineyards*, No. 1:17-cv-00364-SAB, 2018 WL 1155988, at *3 (E.D. Cal. Mar. 2, 2018) (noting immateriality objections are inapplicable on summary judgment). "Objections on any of these grounds are superfluous[.]" *Carden*, 2011 WL 1807384, at *3. Thus, Plaintiff's objections are OVERRULED.

While Defendant filed objections to most of Plaintiff's proffered facts, the Court finds it only necessary to address Defendant's objections to Plaintiff's fact number 26. (ECF No. 44 at

7

7.) Defendant objects to this fact as compound, that Plaintiff's evidence fails to support the fact as stated, and that the evidence disputes Plaintiff's fact. (*Id.*)

A compound objection is a challenge to the characterization of the evidence and not the evidence itself, and it is therefore improper on summary judgment. *See Hanline v. Cty. of Ventura*, No. CV 15-8808-VAP (AJWx), 2017 WL 11682912, at *3 (C.D. Cal. Aug. 7, 2017). Defendant's objection regarding whether the evidence supports Plaintiff's fact number 26 is also aimed at the characterization of the evidence as opposed to the evidence itself and it is also improper. *See Bischoff v. Brittain*, 183 F. Supp. 3d 1080, 1084 (E.D. Cal. 2016). Accordingly, Defendant's objections to Plaintiff's fact number 26 are OVERRULED.

### B.     Claim Two: Excessive Force[2]

Defendant argues summary judgment is appropriate on Plaintiff's excessive force claim because the force used was objectively reasonable under the totality of the circumstances. (ECF No. 26-1 at 18.) Defendant also asserts she is entitled to qualified immunity. (*Id.* at 25.) In opposition, Plaintiff argues Defendant used excessive force and Defendant is not entitled to qualified immunity. (ECF No. 25 at 12, 14.)

Plaintiff brings his first claim pursuant to 42 U.S.C. § 1983 and asserts Defendant used excessive force against him in violation of the Fourth Amendment. (ECF No. 1 at 5.) A Fourth Amendment claim of excessive force is analyzed under the framework set forth in *Graham v. Connor*, 490 U.S. 386 (1989). Under *Graham*, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

The reasonableness of an officer's use of force is examined in a three-step analysis. *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011). The first step is "assess[ing] the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and

---

[2]     Plaintiff's first claim was previously dismissed with prejudice. (ECF No. 23.)

1  amount of force inflicted." *Id.*  The second step is "evaluat[ing] the government's interest in the
2  use of force." *Id.*  The third step is "balanc[ing] the gravity of the intrusion on the individual
3  against the government's need for that intrusion." *Id.*  The Ninth Circuit has held summary
4  judgment in excessive force cases should be granted sparingly. *Id.*

5  Plaintiff argues that Rio's bite when he was handcuffed constituted excessive force.  (ECF
6  No. 35 at 12.)  Although Plaintiff contends there were multiple bites by Rio, his proffered facts
7  only identify one bite as occurring when he was handcuffed, which Plaintiff identifies as the third
8  bite.  (ECF No. 35-3 at 6.)  Because Plaintiff does not contend that any bite occurring before he
9  was handcuffed was excessive, the Court solely analyzes the third bite.

10  As an initial matter, the parties dispute whether Defendant commanded Rio to give the
11  third bite and whether the bite actually occurred, with Defendant asserting Sergeant Tom's body-
12  worn camera video disproves Plaintiff's contentions.  (*See* ECF No. 35 at 12; ECF No. 39 at 7.)
13  Therefore, the Court will first determine whether Sergeant Tom's video shows there is no triable
14  issue as to Defendant commanding Rio to bite Plaintiff for the third time and whether the bite
15  occurred.  If the video does not disprove Defendant's bite command or the third bite, the Court
16  will perform the three-step analysis regarding the reasonableness of Defendant's use of force.
17  Following that analysis, the Court will address the parties' arguments regarding qualified
18  immunity.

19                 *i.*      *Sergeant Tom's Video*

20  Plaintiff testified at his deposition that Rio bit his Achilles heel after he went down to the
21  ground and handcuffs were placed on both of his hands.  (ECF No. 35-3 at 6; ECF No. 43 at 135–
22  36.)  Additionally, Plaintiff's testimony references a command from Defendant for Rio to bite
23  Plaintiff when he was already in handcuffs.  (ECF No. 35-3 at 6; ECF No. 43 at 135.)  Therefore,
24  drawing all reasonable inferences in Plaintiff's favor, he has produced evidence establishing that
25  Defendant commanded Rio to bite him and Rio bit him after he went down to the ground and was
26  handcuffed.

27  ///
28  ///

The Court has examined Sergeant Tom's video.[3] (*See* ECF No. 26-3, Exhibit K, Sgt. Thomas Tom VieVu Body-Worn Camera Footage, Video 1.) "[W]hen a video records the events in question, no genuine dispute of fact exists for anything that is clearly discernable in the recording even if sworn testimony in the record[] contradicts what the video shows." *Mack v. Town of Paradise*, No. 2:16-cv-02504-TLN-DMC, 2020 WL 1952665, at *5 (E.D. Cal. Apr. 22, 2020); *see also Scott v. Harris*, 550 U.S. 372, 378, 380–81 (2007).

At 0:20 in Sergeant Tom's video, Plaintiff is on the ground on his stomach and fully handcuffed. (*Id.*) The video frame at that point does not show Plaintiff's left ankle. (*Id.*) At 0:22, Rio can be seen biting and tugging on Plaintiff's left pant leg near his left buttock. (*Id.*) At 0:35, Rio stops tugging Plaintiff's on left pant leg. (*Id.*) Starting at 0:35, Defendant and Rio are completely off frame for the rest of the video. (*Id.*) At 0:36–0:38, Rio can be heard panting. (*Id.*) At 0:38, Rio barks once. (*Id.*) At 0:41, Rio begins barking continuously. (*Id.*) At 0:56, Sergeant Tom begins to pull Plaintiff up off the ground. (*Id.*) Also at 0:56, the video frame moves and Plaintiff's left ankle can be seen for the first time since he was handcuffed, and Rio is not biting Plaintiff's left ankle at that time. (*Id.*) At 1:03, Rio stops barking. (*Id.*) By 1:06, Plaintiff is on his feet. (*Id.*)

The Court disagrees with Defendant's contention that Sergeant Tom's video shows Plaintiff was not bitten after he was fully secured and in handcuffs. From 0:20 until 0:56, Plaintiff is fully handcuffed and on the ground on his stomach. Therefore, to disprove the third bite, it must be clearly discernable from the video that Rio did not bite Plaintiff in that time frame. However, after 0:35, Rio is no longer seen in the video frame and Plaintiff's ankle is not seen until 0:56. Therefore, Rio could have bitten Plaintiff's ankle between 0:35 and 0:56 and it would not have been shown in the video. Additionally, to the extent Defendant argues Rio could not have bitten Plaintiff after 0:36 because Rio is heard panting and then barking continuously, Rio is neither barking nor panting from 0:39 to 0:41. Thus, it is not clearly discernable from Sergeant

---

[3] Defendants submitted other videos in addition to what was labeled Video 1 from Sergeant Tom. (*See* ECF No. 26-3, Exhibits I, J, K, L.) However, Defendant only identifies Video 1 from Sergeant Tom when arguing that the third bite did not occur. (ECF No. 39 at 7.) Therefore, the Court only discusses Video 1 from Sergeant Tom.

Tom's video that Rio did not bite Plaintiff after he was on the ground and handcuffed.

Moreover, while Defendant argues she cannot be seen or heard in the video giving any commands for Rio to bite Plaintiff, Defendant is completely off frame starting at 0:35.  Therefore, Defendant could have commanded Rio to bite Plaintiff and it would not have been on video. Additionally, Defendant could have given an oral command that was not picked up by the microphone on Sergeant Tom's body-worn camera.  Therefore, it is not clearly discernable from Sergeant Tom's video that Defendant did not give Rio a command to bite Plaintiff after he was on the ground and handcuffed.

Accordingly, there is a triable issue of fact as to whether Defendant commanded Rio to bite Plaintiff a third time when he was on the ground and handcuffed and whether that bite occurred.  Because all factual disputes are resolved in the opposing party's favor on summary judgment, for the purposes of the instant motion the Court assumes Defendant gave the bite command and the third bite occurred.

*ii.     Severity of the Intrusion*

Defendant argues the type of force used was minimal and non-deadly.  (ECF No. 26-1 at 22.)  Defendant also contends that even assuming Plaintiff's Achilles heel injury was caused by Rio and the force was serious, the force was reasonable.  (*Id.*)  Plaintiff argues the level of force of a police dog is dependent on the factual circumstances.  (ECF No. 35 at 12.)  Plaintiff does not classify the level of the force used against him, but he identifies cases where police dog bites have been held to be serious force.  (*Id.* at 12–13.)

Depending on the circumstances, the Ninth Circuit has classified deployment of a police dog as a severe use of force or a moderate use of force. *Seidner v. de Vries*, 39 F.4th 591, 597 (9th Cir. 2022).  The force used was "severe" when a dog bit the plaintiff three times, dragged him between four and ten feet, and nearly severed his arm. *Lowry v. City of San Diego*, 858 F.3d 1248, 1257 (9th Cir. 2017) (en banc).  In a case where a dog bit the plaintiff on the lip, which required three stitches, but the officer called the dog off the plaintiff very quickly, the use of force was moderate. *Id.* at 1253, 1254, 1257.

///

Here, the quantum of force used was moderate. The instant case is far from those involving a severe use of force because Plaintiff only received a two-centimeter gash over his left heel. Because of the one stitch Plaintiff received, the instant case is similar to *Lowry* where that plaintiff received three stitches. Although the *Lowry* plaintiff required more stitches than Plaintiff and a bite to the lip instead of the ankle, the instant case still involves the deployment of a police dog. Because the Ninth Circuit has classified deployment of a police dog as a severe or moderate use of force, the Court finds the force used to be moderate.

### iii. The Government's Interest

Courts assess the importance of the government's interest in the use of force by evaluating: "(1) the severity of the crime at issue[;] (2) whether the suspect posed an immediate threat to the safety of the officers or others[;] and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 396). The most important factor is whether the suspect posed an immediate threat to the safety of the officer or another. *Tan Lam v. City of Los Banos*, 976 F.3d 986, 998 (9th Cir. 2020). The Court examines each of these factors in turn.

For the severity of the crime, it is undisputed that there was physical struggle between Plaintiff and Defendant, and that Plaintiff struck Defendant in the back several times while they were on the ground. (ECF No. 35-2 at 21.) It is also undisputed that Plaintiff was able to overpower Defendant. (*Id.*) Because Plaintiff's suspected offenses indicated that he posed a danger to Defendant, "the 'severity of the crime at issue' weighs [toward] a finding that the government had an interest in the use of significant force." *See Young v. Cty. of L.A.*, 655 F.3d 1156, 1165 (9th Cir. 2011).

Regarding the threat to safety, Plaintiff had just been involved in a struggle with Defendant, including hitting her in the back several times and overpowering her, and thus, Plaintiff posed some level of threat before the third bite. On the other hand, the third bite occurred when Plaintiff was handcuffed and on the ground, and therefore, a reasonable jury could find he was not an immediate threat to Defendant or others. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003) (noting that while the individual may have

12

represented a threat before he was handcuffed, a reasonable jury could find he posed a minimal threat after he was knocked to the ground and handcuffed). Moreover, it is unclear when Plaintiff was bitten for the third time, as this information is not contained in Plaintiff's evidence (*see* ECF No. 35-3), nor clearly discernable from Sergeant Tom's video. Thus, there is a genuine dispute as to the amount of time that elapsed between Plaintiff's struggle with Defendant and when he was bitten for the third time. *See Alford v. Humboldt Cty.*, 785 F. Supp. 2d 867, 877 (N.D. Cal. 2011) ("Courts may consider timing in assessing the reasonableness of police response to a perceived threat."). Accordingly, there is a genuine dispute as to the level of immediate threat to safety posed by Plaintiff.

As to the active resistance or flight factor, it cannot be disputed that Plaintiff actively resisted arrest, since it is undisputed that Plaintiff physically struggled with Defendant. However, Plaintiff contends he was handcuffed and compliant when he was bitten for the third time. Therefore, taking Plaintiff's evidence as true, some amount of time passed between when the active resistance ended and when he was bitten for the third time. While the Court is mindful to not judge with the 20/20 vision of hindsight, the amount of time that elapsed between Plaintiff actively resisting and being bitten for the third time is a relevant consideration. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (noting the totality of the circumstances is to be examined). Accordingly, there is a genuine dispute regarding the active resistance or flight factor.

*iv.     Balancing*

The Court finds genuine disputes of material fact preclude balancing the intrusion on Plaintiff's rights with that of the government's need for the intrusion. As stated, there are genuine disputes of material fact concerning the threat to safety and active resistance or flight factors. Thus, a reasonable fact finder could disagree as to whether Defendant used the appropriate "quantum of force" against Plaintiff. *See Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). Therefore, assuming the third bite occurred, the Court finds there is a genuine dispute of fact as to whether Defendant used unreasonable force.

///

1       *v.*  *Qualified Immunity*

2   Defendant asserts she is entitled to qualified immunity because she did not violate clearly
3 established law. (ECF No. 26-1 at 26.) Plaintiff argues qualified immunity does not apply. (ECF
4 No. 35 at 14.)

5   Qualified immunity "protects government officials from liability for civil damages insofar
6 as their conduct does not violate clearly established statutory or constitutional rights of which a
7 reasonable person would have known." *Mueller v. Auker*, 700 F.3d 1180, 1185 (9th Cir. 2012)
8 (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). Qualified immunity "gives
9 ample room for mistaken judgments by protecting all but the plainly incompetent or those who
10 knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

11   The Court has determined the record contains sufficient evidence to raise a triable issue as
12 to whether Defendant's conduct, assuming the third bite occurred, constituted excessive force in
13 violation of the Fourth Amendment. As such, "[s]ummary judgment in favor of . . . Defendant[]
14 is improper because where there are factual disputes as to the parties' conduct or motives,
15 qualified immunity cannot be resolved at summary judgment and the case must proceed to trial."
16 *Beech v. City of Stockton*, No. 2:15-cv-00268-TLN-CDK, 2021 WL 4429455, at *7 (E.D. Cal.
17 Sept. 27, 2021) (citing *Beaver v. City of Fed. Way*, No. CV05-1938MJP, 2006 WL 3203729, at
18 *3 (W.D. Wash. Nov. 3, 2006); *Liston v. Cty. of Riverside*, 120 F.3d 965, 975 (9th Cir.1997));
19 *Longoria v. Pinal Cty.*, 873 F.3d 699, 711 (9th Cir. 2017) (holding the defendants were not
20 entitled to qualified immunity because there was a material issue of fact as to whether the officer
21 violated the decedent's clearly established constitutional right); *Espinosa v. City & Cty. of S.F.*,
22 598 F.3d 528, 532 (9th Cir. 2010) (affirming denial of summary judgment on qualified immunity
23 because "there are genuine issues of fact regarding whether the officers violated [the decedent's]
24 Fourth Amendment rights," and those issues of fact "are also material to a proper determination
25 of the reasonableness of the officers' belief in the legality of their actions"). Accordingly, the
26 Court cannot find Defendant is entitled to qualified immunity at this stage.

27   Therefore, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's
28 second claim for excessive force.

       C.  Claim Three: Retaliation for Questioning Police Action

Defendant argues she is entitled to summary judgment on Plaintiff's third claim for several reasons, including that Plaintiff cannot establish she had a retaliatory motive and that any alleged retaliatory motive was the but-for cause of Plaintiff's injury. (ECF No. 26-1 at 28–30.) While Plaintiff's introduction states his opposition will address this claim, the claim is not mentioned again. (*See* ECF No. 35.)

For this claim, Plaintiff's Complaint asserts he was protected against retaliation for his speech under the First Amendment. (ECF No. 1 at 7.) However, Plaintiff's opposition does not mention the First Amendment or otherwise respond to Defendant's arguments regarding this claim. (*See* ECF No. 35.) Therefore, due to Plaintiff's failure to address the basis of his claim or respond to any of Defendant's arguments, Plaintiff has abandoned the claim. *See Cobarrubia v. Edwards*, No. 4:19-CV-07899-KAW, 2021 WL 4846948, at *3 (N.D. Cal. June 4, 2021); *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011) (affirming summary judgment on a claim because the plaintiff "abandoned th[e] claim by failing to raise it in opposition to the [defendant's] motion for complete summary judgment")

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's third claim for retaliation for questioning police action.

       D.  Claim Five: Violation of California Civil Code § 52.1[4]

Defendant argues summary judgment is appropriate on Plaintiff's fifth claim because Defendant's use of force was objectively reasonable. (ECF No. 26-1 at 30.) Defendant also asserts Plaintiff cannot show Defendant acted with the specific intent to violate Plaintiff's rights or that Defendant engaged in conduct constituting threats, intimidation, or coercion. (*Id.* at 31–32.) Plaintiff's argument concerning this claim, as well as for his other state law claims, reads in full: "Plaintiff incorporates his argument for excessive force to support his state law claims for [California Civil Code §] 52.1, Battery, Intentional Infliction of Emotional Distress, and Negligence." (ECF No. 35 at 16.)

---

[4] Plaintiff's fourth claim was previously dismissed with prejudice. (ECF No. 23.)

The Bane Act, California Civil Code § 52.1, "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022).

Turning to Defendant's argument regarding the requisite showing of specific intent, Plaintiff cannot successfully oppose summary judgment by only incorporating his excessive force claim argument. As indicated, a Bane Act claim requires the additional showing of specific intent beyond a § 1983 claim. By only incorporating his excessive force argument, Plaintiff's opposition does not argue that Defendant had the necessary specific intent and Plaintiff does not address Defendant's arguments. (*See* ECF No. 35); *see also Cobarrubia*, 2021 WL 4846948, at *3 (noting the plaintiff's failure to respond to the defendant's argument on a particular issue constituted abandonment of that issue).

As such, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's fifth claim under California Civil Code § 52.1.

E.     Claim Six: Battery

Defendant argues Plaintiff's sixth claim fails because Defendant's use of force was objectively reasonable under the circumstances. (ECF No. 26-1 at 33.) Plaintiff incorporates his excessive force claim argument to address his battery claim. (ECF No. 35 at 16.)

42 U.S.C. § 1983 has been described as the "federal counterpart of state battery . . . actions," and the standard of reasonableness is the same. *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008). Therefore, a battery claim requires the plaintiff to prove the officer used unreasonable force. *Campos v. City of Merced*, 709 F. Supp. 2d 944, 963 (E.D. Cal. 2010).

As previously discussed, there is a genuine dispute as to whether Defendant used unreasonable force in connection with Plaintiff's excessive force claim. Therefore, there is also a genuine dispute as to whether Defendant used unreasonable force in connection with Plaintiff's battery claim. *See Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 925 (N.D. Cal. 2014).

Accordingly, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's sixth claim for battery.

### F.     Claim Seven: IIED

Defendant argues summary judgment is appropriate on Plaintiff's seventh claim because Defendant's use of force was objectively reasonable.  (ECF No. 26-1 at 33.)  Defendant also asserts Plaintiff fails to establish any outrageous conduct by Defendant or that Defendant intended to cause severe emotional distress.  (*Id.* at 34–35.)  Plaintiff incorporates his excessive force claim argument to address his IIED claim.  (ECF No. 35 at 16.)

An IIED claim requires: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).

Turning to Defendant's argument regarding the necessary showing of intent, Plaintiff cannot successfully oppose summary judgment by only incorporating his excessive force claim argument.  For example, a § 1983 excessive force claim does not require the defendant to have the intention of causing, or reckless disregard of the probability of causing, emotional distress.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  By only incorporating his excessive force argument, Plaintiff's opposition does not argue the additional IIED elements or the necessary intent or reckless disregard, nor does Plaintiff address Defendant's arguments.  (*See* ECF No. 35); *see also Cobarrubia*, 2021 WL 4846948, at *3 (noting the plaintiff's failure to respond to the defendant's argument on a particular issue constituted abandonment of that issue).

Therefore, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's seventh claim for IIED.

### G.     Claim Eight: Negligence

Defendant argues summary judgment is appropriate on Plaintiff's eighth claim because her use of force was objectively reasonable.  (ECF No. 26-1 at 36.)  Plaintiff incorporates his excessive force claim argument to address his negligence claim.  (ECF No. 35 at 16.)

1       "To prove negligence, 'a plaintiff must show that [the] defendant had a duty to use due
2 care, that he breached that duty, and that the breach was the proximate or legal cause of the
3 resulting injury.'" *L.F. by & through Brown v. City of Stockton*, No. 2:17-cv-01648-KJM-DB,
4 2020 WL 4043017, at *24 (E.D. Cal. July 17, 2020) (quoting *Hayes v. Cty. of San Diego*, 57 Cal.
5 4th 622, 629 (2013)). "[D]uty is a critical element of negligence liability." *Hayes*, 57 Cal. 4th at
6 629. The California Supreme Court "has long recognized that peace officers have a duty to act
7 reasonably when using deadly force." *Id.* To determine reasonableness, California negligence
8 law, like the Fourth Amendment's reasonableness test, requires a consideration of the totality of
9 the circumstances surrounding any use of deadly force. *L.F.*, 2020 WL 4043017, at *24 (citing
10 *Hayes*, 57 Cal. 4th at 629).

11       As already discussed herein, there is a genuine dispute of fact as to whether Defendant
12 used unreasonable force. This suffices to also create a genuine dispute of fact as to whether
13 Defendant breached the duty of care owed to Plaintiff. *See Lawrence v. City & Cty. of S.F.*, 258
14 F. Supp. 3d 977, 999 (N.D. Cal. 2017).

15       Accordingly, the Court DENIES Defendant's motion for summary judgment as to
16 Plaintiff's eighth claim for negligence.

17               H.     <u>Doe Defendants</u>

18       Defendant contends the Doe Defendants must be dismissed because Plaintiff has not
19 substituted in or served any Doe Defendants. (ECF No. 26-1 at 37.) Plaintiff does not address
20 Defendant's argument or the Doe Defendants. (*See* ECF No. 35.)

21       "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie*
22 *v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Therefore, dismissal of Doe defendants is
23 warranted when sufficient time has passed with no attempt by the plaintiff to amend the
24 complaint to substitute in named defendants. *Gangstee v. Cty. of Sacramento*, No. CIV. S-10-
25 1004 KJM GGH, 2012 WL 112650, at *1 n.1 (E.D. Cal. Jan. 12, 2012); *Chenault v. San Ramon*
26 *Police Dep't*, No. 15-CV-03662-SK, 2016 WL 4702653, at *2 (N.D. Cal. Sept. 8, 2016).

27       Plaintiff's Complaint names Doe Defendants. (ECF No. 1.) Although Defendant filed his
28 Complaint on October 28, 2019, he has not attempted to amend it to substitute in named

defendants. (*Id.*) Therefore, the Court may dismiss the Doe Defendants.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the Doe Defendants. The Doe Defendants are hereby DISMISSED from this action.

### I.  Punitive Damages

Defendant argues there is no evidence to support punitive damages. (ECF No. 26-1 at 37.) Plaintiff does not address Defendant's argument or punitive damages. (*See* ECF No. 35.)

"Punitive damages may be awarded in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *S.T. by & through Niblett v. City of Ceres*, 327 F. Supp. 3d 1261, 1283 (E.D. Cal. 2018). "Under California law, a plaintiff may seek punitive damages 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.'" *Id.* Additionally, summary judgment may be granted on a claim for punitive damages. *See id.* at 1283–84.

On a motion for summary judgment, the plaintiff's failure to address the defendant's arguments regarding a claim serves as the plaintiff abandoning that claim. *Est. of Shapiro*, 634 F.3d at 1060; *see also Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir.2008) (quoting *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'").

The Complaint's prayer for relief requests punitive damages. (ECF No. 1 at 13.) However, Plaintiff failed to respond to Defendant's argument regarding punitive damages. (*See* ECF No. 35.) Plaintiff also does not mention punitive damages in the opposition. (*See id.*) Therefore, Plaintiff has abandoned his claim for punitive damages.

Accordingly, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim for punitive damages.

///

///

///

19

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.  (ECF No. 26.)  Defendant's motion is GRANTED with respect to: (1) Plaintiff's Third Claim for Retaliation for Questioning Police Action; (2) Plaintiff's Fifth Claim Under California Civil Code § 52.1; (3) Plaintiff's Seventh Claim for Intentional Infliction of Emotional Distress; (4) the Doe Defendants; and (5) Plaintiff's Claim for Punitive Damages.  Defendant's motion is DENIED in all other respects.  The Doe Defendants are hereby DISMISSED from this action.  The parties are ORDERED to file a Joint Status Report not later than thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

**DATED:  September 30, 2022**

Troy L. Nunley
United States District Judge